UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

In re:

DANIEL GORDON,

                     Debtor.

———————————————————————

DANIEL GORDON,

                Appellant,

    – against –

ANGELA G. TESE-MILNER, TRUSTEE
OF THE ESTATE OF DANIEL GORDON,

               Appellee.

**OPINION AND ORDER**

16 Civ. 5387 (ER)

16 Civ. 5398 (ER)

Ramos, D.J.:

      Daniel Gordon ("Gordon" or "Appellant") appeals from an Order of the United States

Bankruptcy Court for the Southern District of New York dated May 2, 2016 (the "May Order").

*Angela Tese Milner, Trustee of the Estate of Daniel Gordon v. Daniel Gordon*, Adv. Pro. No. 10-

03767, Doc. 93.  The May 2 Order awarded sanctions to Fox Rothschild, special litigation

counsel to Angela Tese Milner, chapter 7 trustee of Gordon's estate, pursuant to Sections 105(a)

and 727(a)(2) and (4) of the Bankruptcy Code for Gordon's improper conduct during the

bankruptcy proceeding.

      For the reasons set for below, the Appellant's appeal is DENIED.  The Judgment of the

Bankruptcy Court is AFFIRMED.

## I. Factual and Procedural Background

### A. The Bankruptcy Court Proceedings & Appeal

On October 19, 2009, Gordon filed a voluntary petition for relief under Chapter 7 of Title 11 of the United States Code (the "Bankruptcy Code"). *In re Daniel Gordon*, No. 09-16230 (CGM) ("Discharge Proceeding"), Doc. 1. Angela G. Tese-Milner is the trustee of Gordon's estate (the "Trustee"). *Id.*, Doc. 26.

Approximately one month later, on November 22, 2009, Gordon filed bankruptcy Schedules and a Statement of Financial Affairs in the Discharge Proceeding. *Id.*, Docs. 22, 23. On February 1, 2010, he filed an Amended Statement of Financial Affairs. *Id.*, Doc. 45. Gordon included the information in these filings under penalty of perjury. *Id.*

On February 17, 2010, the Court authorized the retention of Fox Rothschild LLP ("Fox") as special litigation counsel for the Trustee. *Id.*, Doc. 49. On September 28, 2010, the Trustee filed a complaint seeking a judgment denying Gordon's discharge pursuant to Section 727(a) of the Bankruptcy Code claiming, among other things, that Gordon had failed to disclose assets totaling in excess of $3 million and made numerous false oaths in connection with his bankruptcy filings.[1] *Id.*, Doc. 77; *Angela Tese Milner, Trustee of the Estate of Daniel Gordon v. Daniel Gordon*, Adv. Pro. No. 10-03767 ("Adversary Proceeding"), Doc. 1. Approximately two months later, on December 10, 2010, Gordon filed amended bankruptcy Schedules and a Second Amended Statement of Financial Affairs in the Discharge Proceeding. Discharge Proceeding, Docs. 89, 90. On December 16, he filed an answer in the Adversary Proceeding, generally

---

[1] Specifically, the Trustee brought claims pursuant to Section 727(a)(2) and 727(a)(4)(A). Section 727(a)(2) provides that the court shall grant the debtor a discharge, unless "the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate . . . has transferred, removed, destroyed, mutilated, or concealed" property of the debtor or estate. 11 U.S.C.A. § 727(a)(2). Section 727(a)(4)(A) allows a court to deny a debtor's discharge if "the debtor knowingly and fraudulently . . . made a false oath or account." 11 U.S.C.A. § 727(a)(4)(A). The Trustee alleged that Gordon had both (1) transferred and (2) concealed property with an intent to defraud creditors and the Trustee and that he made false oaths in connection with those concealments and transfers.

denying the allegations in the complaint and reserving claims and causes of action against the Trustee.  Adversary Proceeding, Doc. 12.

On February 8, 2012, the Trustee filed a motion to approve a settlement reached between, the Trustee, Gordon, and others, conditioned upon the discharge of all of Gordon's filed claims. *Id.*, Doc. 27.  The settlement also provided that the Trustee would withdraw any complaints against Gordon.  *Id.*  However, on April 24, 2012 the Trustee informed the Court that she was withdrawing the settlement.  *Id.*, Doc. 31.  Instead, on February 20, 2013, the Trustee filed an Amended Complaint, dismissing certain claims, but maintaining its allegations that Gordon had (1) failed to disclose assets with the intent to hinder, delay, or defraud creditors or a trustee under Section 727(a)(2) ("concealment claim"); (2) transferred property with the intent to hinder, delay, or defraud creditors or a trustee under Section 727(a)(2) ("transfer claim"); and (3) made materially false statements under oath under Section 727(a)(4).  *Id.*, Doc. 48.  The Court held a bench trial on March 12 and 13, and the parties submitted final post-trial briefings on May 20, 2013.  *Id.*, Docs. 63, 64.

On January 13, 2015, Bankruptcy Court Judge Robert E. Gerber issued a decision denying Gordon's discharge.  *Id.*, Doc. 67 (the "Jan. 13 Opinion").  First, Judge Gerber ruled in Gordon's favor on the transfer claim.  He noted that it was Gordon's failure to disclose the transfers—not the transfer themselves—that warranted the denial of the discharge.  Jan. 13 Opinion at 37.  Second, Judge Gerber held that the Trustee had proven the concealment claim finding that Gordon had purposefully concealed the following property interests:  a $2 million receivable relating to AllStar Capital Inc. ("AllStar"), assets resulting from $650,000 in transfers relating to Citadel Construction Corporation ("Citadel"), and assets resulting from a $500,000 transfer from the debtor to Wurk Times Square LLC ("Wurk TS").  *Id.* at 38.  Lastly, Judge

Gerber found that Gordon made material false oaths under section 727(a)(4) on his bankruptcy schedules and statements with respect to these same transactions, and also with respect to his 2009 income, investments in Cascar LP ("Cascar") and Citadel, a $49,000 IRA contribution, and a $25,000 payment to Wachovia Bank ("Wachovia").  *Id.*

Gordon appealed the Jan. 13 Opinion on February 22, 2015.  Adversary Proceeding, Doc. 71.  On August 3, 2015, the District Court affirmed the Bankruptcy Court's decision denying Gordon's discharge.  *Id.*, Doc. 79; *In re Gordon*, 535 B.R. 531 (S.D.N.Y. 2015).

### B. The Sanctions Motion

On March 17, 2016, Fox filed a motion pursuant to 11 U.S.C. § 105(a) ("Section 105(a)") and Rule 9011 of the Federal Rules of Bankruptcy Procedure ("Rule 9011"), seeking sanctions in the amount of $500,000 against Gordon for his conduct during the Discharge Proceeding. Adversary Proceeding, Doc. 80.  Specifically, Fox claimed that because Gordon knowingly acted in bad faith by withholding information and making "deceptive" bankruptcy filings, Fox had to embark on an unnecessary fishing expedition to reveal Gordon's true assets, greatly increasing their legal fees.  *Id.*  Fox further claimed that Gordon is of substantial means and capable of paying its legal fees and costs.  *Id.*

The Bankruptcy Court directed the parties to appear on April 7, 2016 for a hearing on the motion—a date previously scheduled to address other issues in the case, including fee applications and a motion to abandon an adversary proceeding.  On March 28, 2015, Gordon's counsel, Donald David, filed a letter with the Bankruptcy Court requesting a 30-day adjournment of the hearing date.  *Id.*, Doc. 83.  He stated that his co-counsel on another matter had been admitted to a hospital for surgery, and that as a result he would have to attend an arbitration hearing in Florida for approximately two weeks.  *Id.*  Mr. David further claimed that since he

was counsel for the Adversary Proceeding, Gordon would be at a "tremendous disadvantage if someone else were to try to handle [the motion for Sanctions]." *Id.* Fox opposed counsel's request for an adjournment, claiming that the conference was set to resolve additional matters—not just the sanctions motion—and that Gabriel DelVirginia, who had been representing Gordon throughout the bankruptcy, was still available to appear. *Id.*, Doc. 84. After considering the parties' submissions, the Bankruptcy Court denied counsel's request for an adjournment.

Gordon timely filed his opposition to the motion for sanctions on March 31. *Id.*, Doc. 86. Without citing to any caselaw or statute, he claimed that (1) the record did not contain sufficient facts to support a finding that sanctions were warranted and (2) that it was against public policy to grant sanctions "against any debtor who, faced with a non-discharge adversary proceeding brought by a [t]rustee, decides to defend himself and loses," because it would result in a windfall for the trustee. *Id.* Gordon also requested that the Bankruptcy Court hold an evidentiary hearing and permit further discovery to determine Fox's true motivation for pursuing actions against an estate with "few creditors and no assets." *Id.*

Chief Bankruptcy Judge Cecilia G. Morris held a hearing on April 7, 2016 and issued a ruling from the bench. *Id.*, Doc. 89 ("4/7/2016 Hearing Transcript"). Chief Judge Morris denied Fox's motion for sanctions pursuant to Rule 9011 because the firm failed to comply with the mandatory notice requirements of that rule. 4/7/2016 Hearing Transcript at 18:1–4. However, she found that sanctions pursuant to the court's inherent powers under Section 105(a) were appropriate because of Gordon's false oaths and concealments in its bankruptcy filings, which caused unreasonable delay of the action. *Id.* at 19:9–13, 19:21–25. Chief Judge Morris did not assess whether Fox's $500,000 demand was reasonable and instead granted leave for the parties to submit supplemental memoranda to support their respective positions. *Id.* at 21:2–4. On May

2, 2016, the Bankruptcy Court issued an Order granting Fox's request for sanctions.  Adversary

Proceeding, Doc. 93.

### C.  The Instant Appeal

On May 13, 2016, Gordon filed the instant notice of appeal of the Bankruptcy Court's

order.[2]  *In re Daniel*, No. 16 Civ. 5398 (ER), Doc. 1; Adversary Proceeding, Doc. 94.  He argued

that the Bankruptcy Court (1) erred in denying his counsel's request for an adjournment, (2)

deprived him of his right to due process by refusing to provide an evidentiary hearing, (3) did not

sufficiently articulate a legal basis pursuant to the Bankruptcy Code to support its award of

sanctions, (4) erred in finding that the Trustee had met her burden of proof, (5) exceeded its

authority under Section 105(a), and (6) erred in finding that the Trustee established the

collectability of the sanctions granted against him.

## II.  Standard of Review

This Court has jurisdiction to hear appeals from decisions of a bankruptcy court pursuant

to 28 U.S.C. § 158(a), which provides in relevant part that "[t]he district courts of the United

States shall have jurisdiction to hear appeals . . . from final judgments, orders, and decrees; . . .

[and,] with leave of the court, from other interlocutory orders and decrees . . . of bankruptcy

judges."  28 U.S.C. § 158(a)(1), (3).  A district court reviews a bankruptcy court's conclusions of

law *de novo* and its findings of fact for clear error.  *See, e.g., In re Ionosphere Clubs, Inc.*, 922

F.2d 984, 988–89 (2d Cir. 1990).  A bankruptcy court's discretionary decisions are reviewed by

a district court for abuse of discretion.  *See In re Boodrow,* 126 F.3d 43, 47 (2d Cir. 1997).

In reviewing a decision of a bankruptcy court, the district court "may affirm on any

---

[2]  The Notice of Appeal from the Bankruptcy Court was filed in this Court on July 6, 2016.  *See* No. 16 Civ. 5387,
Doc. 1.  The next day, on July 7, 2016, Gordon filed the Notice of Appeal again.  *See* No. 16 Civ. 5398, Doc. 1.  The
dockets are nearly identical—the parties have been filing their submissions to the Court on both dockets.

ground that finds support in the record, and need not limit its review to the bases raised or relied upon in the decision [ ] below." *Freeman v. Journal Register Co.*, 452 B.R. 367, 369 (S.D.N.Y. 2010). But the district court may not consider evidence outside the record. *See In re Bear Stearns High–Grade Structured Credit Strategies Master Fund, Ltd.*, 389 B.R. 325, 339 (S.D.N.Y. 2008).

## III. Discussion

### A. New Arguments on Appeal

As an initial matter, Fox argues that Gordon improperly raises new arguments in his appeal, which this Court should not consider. Brief for the Appellee, Angela G. Tese-Milner, Chapter 7 Trustee of the Estate of Daniel Gordon ("Appellee Brief") (Doc. 6) at 12. Specifically, Fox claims that Gordon asserts the following new arguments: (1) the Bankruptcy Court's refusal to hold an evidentiary hearing denied him his right to due process; (2) he was entitled to heightened due process protections; (3) his actions taken in connection with the Discharge Proceeding were colorable; and (4) that Fox did not reference the evidentiary standard for awarding sanctions. *Id.* In response, Gordon argues that he raised the need for an evidentiary hearing with the Bankruptcy Court and that the very fact that he took actions in connection with his Discharge Proceeding, "establishes that he, and his counsel, believed such actions had merit." Appellant's Reply in Further Support of Vacatur of the Sanctions Order ("Appellant Reply") (Doc. 7) at 2. Gordon further asserts that the remaining arguments could not have been raised until after the Bankruptcy Court's ruling. *Id.* at 3.

"[I]t is a well established general rule that an appellate court will not consider an issue raised for the first time on appeal." *See Allianz Ins. Co. v. Lerner*, 416 F.3d 109, 114 (2d Cir. 2005) (quoting *Greene v. United States,* 13 F.3d 577, 586 (2d Cir. 1994)); *see also Morrison v.*

*U.S. Trustees*, 2010 WL 2653394, at \*4 (E.D.N.Y. 2010). "[T]he circumstances normally do not militate in favor of an exercise of discretion to address new arguments on appeal where those arguments were available to the parties below and they proffer no reason for their failure to raise the arguments below." *Kendall v. Employees Retirement Plan of Avon Products*, 561 F.3d 112, 123 (2d Cir. 2009) (quoting *In re Nortel Networks Corp. Sec. Litig.*, 539 F.3d 129, 133 (2d Cir. 2008) (internal quotation marks and alterations omitted)). Thus, any arguments not raised in the bankruptcy court are considered waived; unless such a waiver results in manifest injustice, the new arguments will not be considered on appeal. *See In re Lionel Corp.*, 29 F.3d 88, 92 (2d Cir. 1994); *see also, e.g., In re Barquet Grp., Inc.*, 486 B.R. 68, 73 n.3 (S.D.N.Y. 2012) (citing *Midland Cogeneration Venture Ltd. P'ship v. Enron Corp.*, 419 F.3d 115, 126 (2d Cir. 2005)).

The Court finds that Gordon's claims that (1) the Bankruptcy Court's denial of an evidentiary hearing violated his due process rights and (2) that he was entitled to heightened due process could not be properly asserted before the Bankruptcy Court. In his opposition papers, Gordon made a request for an evidentiary hearing, arguing that there was no evidence in the record to support a finding that sanctions were appropriate. Adversary Proceeding, Doc. 86, Opposition to Trustee's Motion Pursuant to Section 105 of the Bankruptcy Code and Bankruptcy Rule 9011, for Sanctions Against the Debtor ("Gordon Sanctions Opp.") at 4. The Bankruptcy Court, without explicitly denying the request, ruled from the bench based on the papers submitted and following oral argument. Therefore, the arguments were properly preserved and the Court will consider them on appeal.

The Court also finds that Gordon's claim that his actions were colorable was sufficiently raised below to warrant consideration by this Court. In his opposition brief, Gordon argued that the Bankruptcy Court on the record could not determine whether Gordon's actions were taken

with the requisite intent in order to justify an award of sanctions. Gordon Sanctions Opp. at 4.

He further notes that in the Jan. 13 Opinion, Judge Gerber highlighted that it could not find that

Gordon's transfers were made with an intent to defraud creditors and highlights that the Trustee

withdrew a number of causes of action for lack of support. *Id.* at 3, 4. Gordon presents those

same arguments on appeal and claims that the Bankruptcy Court erred by not considering the

merits of his claims in the Adversary Proceeding. Appellant's Opening Brief ("Gordon App.

Brief") (Doc. 4) at 22–23. This argument is thus properly before the Court. However, Gordon's

claims that Fox did not reference an evidentiary standard in its motion for sanctions could have

been raised below and is therefore not properly before this Court.

### B. The Bankruptcy Court Did Not Abuse its Discretion in Denying Counsel's Request for an Adjournment

Gordon argues that the Bankruptcy Court abused its discretion by denying his request for

an adjournment of the sanctions motion hearing to accommodate Mr. David's schedule. Gordon

App. Brief at 14–16. He asserts that the Bankruptcy Court's decision was arbitrary and

prejudicial to his case because it forced Mr. DelVirginia—who had only worked "tangentially"

on the complaint in the Discharge Proceeding and was thus unprepared—to appear for the

sanctions motion. *Id.* at 16. Gordon further notes that Fox did not allege that it would be

prejudiced by the thirty-day adjournment. *Id.* The Bankruptcy Court denied his request and did

not provide the grounds for the denial.

Whether a request for a continuance should be granted is a question within the province

of the sound discretion of trial courts, including the Bankruptcy Court. *See Morris v. Slappy*,

461 U.S. 1, 11 (1983). "The bankruptcy court's discretionary rulings with regard to such matters

as scheduling and continuances are reviewed for abuse of discretion." *In re Dana Corp.*, 574

F.3d 129, 145 (2d Cir. 2009). "Upon review, the decision of a Bankruptcy court to grant or deny

a continuance should only be overturned upon a showing of an abuse of discretion which substantially impairs the ability of the appealing party to litigate effectively." *Wachovia Bank of Georgia, N.A. v. Apex Tech of Georgia, Inc.*, 144 B.R. 649, 652 (S.D.N.Y. 1992). "[N]o such abuse unless the denial was an arbitrary action that substantially impaired the defense." *United States v. Budovsky*, No. 13 CR 00368 (DLC), 2016 WL 386133, at *10 (S.D.N.Y. Jan. 28, 2016) (citing *United States v. Stringer*, 730 F.3d 120, 127 (2d Cir. 2013)). Thus, a party must show "both arbitrariness and prejudice in order to obtain reversal" based on a denial of a continuance. *Id.*

Fox argues that the Bankruptcy Court did not abuse its discretion in denying the adjournment because Gordon was adequately represented at the hearing by Mr. DelVirginia, who appeared at the trial and jointly—with Mr. David—submitted the post-trial brief. Appellee Brief at 13. Fox also notes that the Bankruptcy Court had previously scheduled the conference in February to address other pending matters and that it was both convenient and efficient to hear the sanctions motion on that date. *Id.* In support of its argument, Fox relies on *Ungar v. Sarfite*, 376 U.S. 575 (1964), in which the Supreme Court affirmed the district court's denial of a defendant's request for an adjournment of a criminal matter to allow counsel additional time to prepare for the case. Appellee Brief at 12–13. The Supreme Court held that the district court's denial did not amount to a due process violation because the moving party had not adequately asserted its reasons to justify an adjournment. *Ungar*, 376 U.S. at 591. The Court also noted that "other judges in other courts might well grant a continuance in these circumstances," but that "[g]iven the deference necessarily due a state trial judge in regard to the denial or granting of continuances," it could not find that the district court's denial denied the moving party due process of law. *Id.*

The Court finds that the Bankruptcy Court did not abuse its discretion in denying Mr. David's request for an adjournment. The Bankruptcy Court's denial was neither arbitrary nor sufficiently prejudicial to warrant a reversal by this Court. First, the matter had been pending for nearly six years. At the time Fox filed the sanctions motion, the underlying Adversary Proceeding had been litigated and Gordon's discharge had been denied by the Bankruptcy Court, and that determination had been affirmed by the district court. Thus, it was reasonable for the Bankruptcy Court to deny an adjournment in effort to control and efficiently manage its docket. *See generally Grotto v. Herbert*, 316 F.3d 198, 206 (2d Cir. 2003) (noting that "the trial judge has considerable discretion in matters of scheduling and in seeing that the trial is conducted in a fair, efficient, and orderly manner") (internal citations omitted). Second, Mr. David failed to show how Gordon would be unduly prejudiced by his absence at the hearing. Although Mr. David was the trial attorney and a witness called by the Trustee in the Adversary Proceeding, as Fox notes, Mr. DelVirginia was sufficiently familiar with the conduct at issue in the Adversary Proceeding as counsel of record on the appeal. Moreover, Mr. David was afforded an opportunity to submit opposition papers to Fox's motion prior to the hearing. And, contrary to Mr. David's assertion, it is the party requesting the adjournment—in this case Gordon, not Fox— who has the burden of showing prejudice. *United States v. O'Connor*, 650 F.3d 839, 854 (2d Cir. 2011). ("The burden of showing [substantial impairment of the defense] is on the party complaining of the lack of a sufficient continuance."). Thus, that Fox opposed the request without asserting that it would be prejudiced by an adjournment is of no moment. Lastly, while *Ungar* is not entirely analogous to the instant case—in that this is a civil matter and no constitutional violations have been asserted—it amply supports the notion that district courts have broad discretion to grant or deny continuances, whether civil or criminal, and at any stage

of the litigation. *See also Payne v. Jones*, 711 F.3d 85, 92–93 (2d Cir. 2013) (citing cases noting the disruption and inconvenience continuances can cause throughout a litigation).

Accordingly, this Court finds no abuse of discretion in the Bankruptcy Court's decision to deny counsel's request for an adjournment.

## C. Denial of Evidentiary Hearing

Gordon asserts that the Bankruptcy Court deprived him of his right to due process by refusing to hold an evidentiary hearing. Gordon App. Brief at 17. He claims that he was entitled to heightened procedural protections because the sanctions the court imposed were punitive in nature, in that they were imposed for past wrongful conduct and did not seek to coerce future compliance. *Id.* at 18. Gordon also notes that Chief Judge Morris, who presided over the sanctions motion, did not oversee the Adversary Proceeding and thus had no basis from which to assess Gordon's intent. *Id.* at 20. In response, Fox argued that an evidentiary hearing is not required prior to the imposition of sanctions, that the Jan. 13 Opinion sufficiently articulated the facts supporting an imposition of sanctions, and that Chief Judge Morris appropriately relied on the established record. Appellee Brief at 15.

Bankruptcy courts have the discretion to decide an issue without holding an evidentiary hearing, and a district court can reverse such a decision only if it amounts to an abuse of discretion. *See Key Mech. Inc. v. BDC 56 LLC (In re BDC 56 LLC)*, 330 F.3d 111, 119 n.5 (2d Cir. 2003), *abrogated on other grounds*, *In re Zarnel*, 619 F.3d 156 (2d Cir. 2010). A bankruptcy court does not abuse its discretion in reaching a decision without holding an evidentiary hearing where "the record provided ample evidence on which the court could make such a decision." *C–TC 9th Ave. P'ship v. Norton Co. (In re C–TC 9th Ave. P'ship)*, 113 F.3d 1304, 1313 (2d Cir. 1997).

It is well settled that a person facing possible sanctions is entitled to due process, *i.e.* notice and an opportunity to be heard. *Mackler Productions, Inc. v. Cohen*, 225 F.3d 136, 142 (2d Cir. 2000). That said, the opportunity to be head does not require a full evidentiary hearing. *Banus v. Citigroup Glob. Markets, Inc.*, 757 F. Supp. 2d 394, 400 (S.D.N.Y. 2010). "[T]he opportunity to respond by brief or oral argument may suffice." *In re 60 E. 80th St. Equities, Inc.*, 218 F.3d 109, 117 (2d Cir. 2000) (citing *Klein v. Ulster Sav. Bank*, 127 F.3d 292, 295 (2d Cir. 1997)).

Here, Fox requested sanctions against Gordon to compensate it for the fees and expenses incurred in connection with investigating, prosecuting and ultimately blocking Gordon's discharge. Adversary Proceeding, Doc. 80. Contrary to Gordon's claim, these sanctions are compensatory—not punitive—and constitute one of the mildest forms of sanctions a court can impose. *In re Emanuel*, 422 B.R. 453, 464 (Bankr. S.D.N.Y. 2010) ("[T]he sanctions under consideration are limited to reimbursing JM and the Trustee for their reasonable attorney fees and expenses incurred in opposing the Transfer Motion. This is the mildest form of sanctions.") (citing *Cine Forty-Second St. Theatre Corp. v. Allied Artists Pictures Corp.*, 602 F.2d 1062, 1066 (2d Cir. 1979) ("The mildest [form of sanction] is an order to reimburse the opposing party for expenses caused by the failure to cooperate.")). Thus, Gordon was entitled to no more than the minimum due process requires, *i.e.* notice and an opportunity to be heard and he received both.

Applying these principles, the Court finds that the Bankruptcy Court did not abuse its discretion nor violate Gordon's due process rights by denying his request for an evidentiary hearing. First, due process does not require an evidentiary hearing on a sanctions motion absent disputed facts or issues of credibility. *See Oliveri v. Thompson,* 803 F.2d 1265, 1280 (2d Cir.

1986), *cert. denied,* 480 U.S. 918 (1987).  Here, Fox's motion for sanctions is based on Gordon's conduct throughout the Discharge and Adversary Proceedings, which Judge Gerber described in his thorough findings of fact and which were subsequently affirmed on appeal by the district court.  *See In re Gordon*, 535 B.R. 531 (S.D.N.Y. 2015).  Thus, there were no disputed facts or issues of credibility to decide and Chief Judge Morris had a lengthy record on which she could properly rely.  The Bankruptcy Court did not abuse its discretion in denying an evidentiary hearing under these circumstances.

Second, Chief Judge Morris gave Gordon—through his counsel Messrs. David and DelVirginia—an opportunity to be heard by filing opposition papers and presenting oral argument at the hearing.  It is clear from the transcript of that proceeding that Chief Judge Morris considered both Messrs. David's arguments in the filed opposition and DelVirginia's arguments at the hearing, but ultimately rejected them.  This constitutes sufficient process to vindicate Gordon's constitutional rights.  *See In re AMR Corp.*, 490 B.R. 470, 479–80 (S.D.N.Y. 2013) (finding no violation of due process where party was given opportunity to be heard on motion at hearing and bankruptcy court considered party's arguments).

Accordingly, the Court finds that the Bankruptcy Court did not abuse its discretion in denying Gordon's request for an evidentiary hearing.

### D.  Award of Sanctions

The decision to "impose sanctions is uniquely within the province of a bankruptcy court." *In re Plumeri*, 434 B.R. 315, 327 (S.D.N.Y. 2010).  The appellate court nevertheless needs to ensure that any such decision is made with restraint.  *In re Kalikow*, 602 F.3d 82, 91 (2d Cir. 2010); *see also In Re Highgate Equities, Ltd.*, 279 F.3d 148, 152 (2d Cir. 2002).  As such, a bankruptcy court's award of sanctions will not be set aside by an appellate court in the absence

of an abuse of discretion. *Id.* The bankruptcy court "abuses its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence." *Id.*

### i. Authority Pursuant to Section 105(a)

Gordon argues that the Bankruptcy Court did not apply the proper evidentiary standard in awarding sanctions against him. Gordon App. Brief at 20. Specifically, he claims that the court did not find that there was "clear evidence"—which he then claims should be "clear and convincing evidence"—that his claims were meritless and that he acted for improper purposes. He asserts that the Bankruptcy Court instead used its own standard of "clear and specific finding of bad faith." *Id.* at 21. Gordon further claims that the Bankruptcy Court did not sufficiently articulate a legal basis pursuant to the Bankruptcy Code to justify its sanctions award. *Id.* at 23.

Section 105 provides that the court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105. Sanctions pursuant to section 105 may only be imposed against bad-faith conduct and only when it is tied to a specific provision of the Bankruptcy Code. *In re Parikh*, 508 B.R. 572, 596 (Bankr. E.D.N.Y. 2014). Courts must find a clear showing of bad faith on the part of the party to be sanctioned and clear evidence that the conduct at issue is (1) entirely without color and (2) motivated by improper purposes. *Elmasri v. Rupp*, No. 10 Civ. 2761 (JS), 2011 WL 477726, at *4 (E.D.N.Y. Feb. 2, 2011); *see also Oliveri*, 803 F.2d at 1273 (noting that the bad faith analysis under court's inherent power to sanction requires clear and specific findings of bad faith).

As is evident by the standard articulated by courts in this Circuit, the Bankruptcy Court used the correct standard to assess Fox's request for sanctions. The "clear and specific" evidence language the Bankruptcy Court uses can be found in *Oliveri*, a Second Circuit case explaining

the standard used to impose sanctions pursuant to a court's inherent power—the Bankruptcy Court also repeatedly cites to this case.

Moreover, Chief Judge Morris appropriately tethered its sanctions award to the Bankruptcy Code. Chief Judge Morris stated that sanctions against Gordon were appropriate pursuant to Section 707 because he created "unreasonable delay" and Sections 727(3) and 727(4), which were the basis for the denial of his discharge. Transcript 13:21–24; 19:9–13. In addition to denying a discharge, courts have awarded sanctions for a petitioner's false oaths and misrepresentations made in bankruptcy filings. *See e.g.*, *In re Dubrowsky*, 244 B.R. 560, 579 (E.D.N.Y. 2000) (affirming bankruptcy court's imposition of sanctions under Rule 9011 after denial of discharge pursuant to Section 727 for petitioners false and misleading statements in bankruptcy filings). Thus, the Court finds that it was not an abuse of discretion for Chief Judge Morris to impose sanctions on Gordon for his false oaths and failure to disclose in his bankruptcy filings pursuant to the court's inherent power to sanction and Section 727. *See In re Ambotiene*, 316 B.R. 25, 35 (Bankr. E.D.N.Y. 2004) ("[I]t is not necessary to define the outer bounds of Section 105 to recognize that Section 105 permits the Court to address overreaching conduct by parties in interest and their attorneys that obstructs and imposes unwarranted delay and expense on the bankruptcy administration process."); *see also In re Arana*, 456 B.R. 161, 169 (Bankr. E.D.N.Y. 2011) ("Dishonesty can bring severe consequences, including revocation of discharge and civil sanctions.") (citing 11 U.S.C. § 727)).

Accordingly, the Bankruptcy Court did not commit legal error and this Court will not reverse the award of sanctions on this basis. Having so found, the Court next turns to the Bankruptcy Court's application of that standard.

### 1. Bad Faith

Gordon claims that the Bankruptcy Court did not independently find that he engaged in bad faith conduct, but instead improperly relied on Judge Gerber's decision. Gordon App. Brief at 21. He claims that Judge Gerber actually did not find that he had engaged in bad faith conduct and that even if he had, it was improper for the Bankruptcy Court to rely on the Adversary Proceedings because a discharge proceeding requires only proof by preponderance of the evidence, not clear and convincing as required for sanctions. *Id.* at 22. In response, Fox claims that there was ample support in the record for Judge Gerber's findings and that Chief Judge Morris properly relied on those findings. Appellee Brief at 17–18.

The Court agrees with Fox. "Bad faith, for the purposes of Section 105, is characterized as an attempt to abuse the judicial process." *In re Gorshtein*, 285 B.R. 118, 124 (Bankr. S.D.N.Y. 2002) (internal citations omitted). To determine a party's bad faith, the court is required to assess if that party has misrepresented facts in its submissions to the court. *In re Johnson*, 708 F.2d 865, 868 (2d Cir. 1983). Additionally, courts have held that false representations during bankruptcy proceedings constitute bad faith and are, therefore, subject to sanctions. *See e.g.*, *In re French Bourekas*, 175 B.R. 517, 524 (Bankr. S.D.N.Y. 1994) (awarding sanctions for false representations concerning financing to fund a plan of reorganization that was found to be part of a scheme to prevent secured creditor from enforcing its rights).

Here, the Jan. 13 Opinion is replete with findings demonstrating Gordon's bad faith conduct throughout the bankruptcy proceedings. For example, Judge Gerber began by stating that Gordon had "made one decision after another to withhold disclosure of his financial dealings . . . and then made it worse by providing excuses for the failure to disclose that helped destroy

his credibility and, quite frankly, insulted the intelligence of the Court." Jan. 13 Opinion at 2. He also stated that Gordon, by failing to disclose his property, "displayed a cavalier disregard for his disclosure obligations in a bankruptcy case," and that he "made one material nondisclosure after another, and so many false oaths that they are difficult to count." *Id.* at 3.

In the findings of fact, Judge Gerber noted that Gordon made "egregious" misstatements regarding his 2009 income and his "game-playing with respects to his income in 2007 and 2008 to be strong evidence of his scienter with respect to his duties of disclosure." *Id.* at 23–24. Additionally, Judge Gerber found that Gordon's explanations for his failure to disclose his guaranty obligations until after the Trustee identified their omissions were "unworthy of belief" given "the number and nature of these failures of disclosure." *Id.* at 25. With respect to Gordon's failure to disclose his "Affiliated Businesses," Judge Gerber found that Gordon "should have made the disclosure, knowingly failed to make it, and made a false oath in omitting" them. *Id.* at 27. To the extent that Gordon did eventually disclose the entities in his amended filings, Judge Gerber noted that the subsequent amendments provided further "evidence [of] Gordon's pattern of failures to disclose until circumstances require him to do so." *Id.* at 28. Judge Gerber also found that Gordon had made false oaths with respect to many, if not all, of the assets in question. Because of Gordon's numerous undisclosed assets and false oaths, Judge Gerber denied Gordon's discharge. These findings are more than sufficient to establish bad faith conduct—indeed, together they comprise a quintessential example of bad faith conduct—and Chief Judge Morris properly relied on Judge Gerber's findings.

Moreover, neither at the trial nor at the oral hearing did Gordon provide any convincing argument to the contrary. As Judge Gerber stated frequently, Gordon's explanations for his failure to disclose or false oaths were unpersuasive, incredible, and even "absurd." Jan. 13

Opinion at 8, 10.  At the hearing, Mr. DelVirginia claimed that the Adversary Proceeding was just like any other litigation where it is "X versus Y and X won."  Transcript 16:5–6.  He further asserted that there was nothing "in the record indicating . . . that the parties did [anything] other than contest their respective positions." *Id.* at 15:20–25.  Specifically, there had been no motions to compel discovery or violations of discovery orders.  *Id.* at 16:1819:1.  In response, Fox responded that Gordon did delay the proceeding by obfuscating assets and waiting until the Trustee discovered the assets to disclose them.  Chief Judge Morris found for Fox, stating that Mr. DelVirginia mischaracterized the bankruptcy proceeding, in that it was Gordon's responsibility to disclose the requisite information to allow the Trustee to carry out her duties.

The Court finds that the record amply allows for a specific and clear finding of bad faith. Judge Gerber's findings make clear that these were not mere innocent nondisclosures, but rather that Gordon repeatedly and intentionally made false oaths, which in turn significantly delayed the bankruptcy proceedings, and greatly increased the Trustee's costs.  *See generally Grand St. Realty, LLC v. McCord*, No. 04 Civ. 4738 (CBA), 2005 WL 2436214, at *5 (E.D.N.Y. Sept. 30, 2005) (citing cases where courts have imposed sanctions due to a party's bad faith conduct). Accordingly, Chief Judge Morris' finding is SUSTAINED.

### 2. Merit

Gordon also claims that the Bankruptcy Court failed to establish that his actions were meritless throughout the Adversary Proceeding.  Gordon App. Brief at 22.  Gordon asserts that he was entitled to vigorously defend the action and appeal the decision with which he disagreed. *Id.* at 23.  That statement is true as far as it goes.  However, what a litigant is *not* entitled to do is defend an action in the palpably fraudulent way that Gordon did here.  To determine whether a claim is "colorable," a court must consider whether it "'has some legal and factual support,

considered in light of the reasonable beliefs of the individual making the claim.'" *In re Green*, 422 B.R. 469, 475 (Bankr. S.D.N.Y. 2010) (quoting *Energy Brands Inc. v. Spiritual Brands, Inc.*, 571 F. Supp. 2d 458, 472–73 (S.D.N.Y. 2008)).

Here, although Chief Judge Morris did not specifically address in her bench ruling the merits of Gordon's claims in the Adversary Proceeding, the Jan. 13 Opinion provides a sufficient basis for a finding that many of Gordon's claims were meritless. Judge Gerber found that there was no colorable or reasonable reason for Gordon to not have disclosed a number of assets and payments including the AllStar Capital Loan, Citadel Transfers, Wurk TS, and income statements. The questions in the Schedules and Statements Financial Affairs were straightforward and Judge Gerber found that Gordon's failure to disclose was not inadvertent, but rather part of a pattern to delay disclosure until necessary. This is sufficient to warrant an imposition of sanctions.

Accordingly, the Court finds that Chief Judge Morris' decision to impose sanctions on Gordon pursuant to its inherent powers and Section 105 for false oaths and misrepresentations in his bankruptcy filings under Section 727 was not an abuse of discretion.

### E. Sanctions Award

Gordon argues that the Bankruptcy Court erred in finding that Fox sufficiently established the collectability of its request $500,000 request. Gordon App. Brief at 14. Fox claims that this issue is not properly before the Court because the Bankruptcy Court expressly reserved judgment as to the amount of sanctions pending supplemental briefing by both parties. Appellee Brief at 22. The Court agrees. In its ruling, the Bankruptcy Court explicitly stated that it was entering an "order granting sanctions and . . . delaying for a later date the amount of those sanctions." 4/7/2016 Hearing Transcript at 21:2–4. Gordon filed the instant appeal before the

Bankruptcy Court assessed those supplemental submissions. Thus, there is no question that this issue is not ripe for appeal. *See In re Anderson*, 550 B.R. 228, 237 (S.D.N.Y. 2016), *leave to appeal denied*, No. 15 Civ. 4227 (NSR), 2016 WL 8715935 (S.D.N.Y. Aug. 5, 2016) ("[I]t is clear that the Bankruptcy Court has not ruled on the issue and has reserved judgment until further briefing and relevant facts are presented . . . Therefore, the issue is not ripe for appeal.).

## IV. Conclusion

For the reasons set forth above, Gordon's appeal is DENIED.

The Clerk of Court is respectfully directed to close the cases.

It is SO ORDERED.

Dated: August 16, 2017
New York, New York

Edgardo Ramos, U.S.D.J.